GENE C. SMITH, ANCILLARY ADMINISTRATOR OF THE ESTATE OF CAROL
MARIE CUPIC v. ALFRED MERCER, JAMES LOYS KEOWN, KRIE-
BEL'S, INC., AND CHARLES RUDOLPH KRIEBEL, JR., ADMINISTRA-
TOR CTA OF THE ESTATE OF CHARLES RUDOLPH KRIEBEL

No. 2

(Filed 11 March 1970)

**1. Death § 3— wrongful death action — damages recoverable — pre-**
**1969 law**

Prior to the 1969 Act rewriting the wrongful death statute, the measure
of damages recoverable under the statute for the loss of a human life was
the present value of the net pecuniary worth of the deceased based upon
his life expectancy. G.S. 28-174; Chapter 215, Session Laws of 1969.

**2. Death § 3— 1969 wrongful death statute — date of application —**
**pending litigation**

The 1969 Act rewriting the wrongful death statute *ex vi termini* does
not apply retroactively where the death occurred prior to April 14, 1969,
and an action therefor was instituted on or before April 14, 1969, and was
pending on that date.

**3. Death § 3— wrongful death action — damages recoverable — 1969**
**Act — retroactive application**

The 1969 Act rewriting the wrongful death statute, which now permits
the recovery of (1) expenses for care, treatment and hospitalization inci-
dent to the injury resulting in death, (2) compensation for pain and
suffering of the decedent, (3) the reasonable funeral expenses of de-
cedent, (4) punitive damages, (5) nominal damages, and (6) the present
monetary value of decedent to persons entitled to receive the damages
recovered, *held* to create a new right of action for wrongful death; and
the Act does not have retroactive application to an action for wrongful
death where the death occurred prior to April 14, 1969, the effective date
of the Act. Chapter 215 of the Session Laws of 1969.

**4. Statutes § 8— retroactive effect of statute — rule of construction**

Ordinarily, an intention to give a statute a retroactive operation will
not be inferred; if it is doubtful whether the statute was to operate retro-
spectively, the doubt should be resolved against such operation.

**5. Statutes § 8— retroactive effect of statutes — rule of construction**

Where the effect of giving a statute a retroactive operation would be
to create a new liability in connection with a past transaction, or to in-
validate a defense which was good when one statute was passed, or to
render the statute or amendment unconstitutional, the statute will be re-
garded as operating prospectively only.

**6. Statutes § 8— retroactive law defined — application to remedial or**
**procedural statutes**

A retrospective law is one which creates a new obligation and imposes
a new duty, or attaches a new disability, in respect of transactions or

considerations already passed; hence, remedial statutes, or statutes relating to remedies or modes of procedure, do not come within the legal conception of a retrospective law.

**7. Deaths § 3; Statutes § 8— wrongful death action — 1969 Act — retroactive effect**

Where the 1969 Act rewriting the wrongful death statute related solely to changes in substantive rights and did not affect procedural requirements, a section of the Act providing that the Act is inapplicable to pending litigation will not be construed so as to have retroactive application to those deaths which occurred prior to the effective date of the Act but were not the subject of pending litigation. G.S. 28-174; Chapter 215, Session Laws of 1969.

ON *certiorari* to review an order entered by *Carr, J.*, at the August 18, 1969 Session of WAKE County Superior Court.

The writ of *certiorari* was issued by the Court of Appeals. Thereafter, pursuant to G.S. 7A-31, the cause was certified for review by the Supreme Court before determination by the Court of Appeals.

Plaintiff's intestate was killed as a result of a collision that occurred on U. S. Highway I-95 on March 16, 1968, between a Buick car and a tractor-trailer. The Buick car, in which intestate was a passenger, was owned by Kriebel's, Inc., and operated by Charles R. Kriebel. The tractor-trailer was owned by Alfred Mercer and was operated by James Loys Keown.

No service was obtained upon defendants Mercer and Keown.

The hearing before Judge Carr was on the motion of defendants Kriebel's, Inc., and Charles Rudolph Kriebel, Jr., administrator c.t.a. of the estate of Charles Rudolph Kriebel, to strike from the complaint designated allegations relating solely to damages. Paragraphs 24, 25 and 26 of the complaint are as follows:

"24. That the said decedent was twenty-nine years of age at the time of her death on March 16, 1968, and then had a life expectancy of approximately 41.29 years; that the said decedent was at the time of the fatal collision in excellent health, possessed high intelligence, and had an excellent expectation of being able to live out her life expectancy and being able to perform profitable and useful work for a great number of years; *that had she lived, she would have provided substantial service, protection, care and assistance to her family, as well as security, companionship, guidance, kindly offices and advice.*

"25. *That as a result of the death of the intestate, the plaintiff administrator has sustained damages for funeral expenses of his intestate in a large sum.*

"26. That by reason of the wrongful death of the said decedent, the said plaintiff, in his representative capacity, has been severely and grievously damaged and is entitled to recover of the defendants, jointly and severally, *a lump sum sufficient to compensate plaintiff for the present monetary value of the total compensation represented by such net income, services, protection, care and assistance, society, companionship, comfort, guidance, kindly offices and advice and funeral bills, all in* the amount of Two Hundred Fifty Thousand ($250,000) Dollars."

Judge Carr's order, which allows said motion, strikes from the complaint the allegations italicized above, being all of Paragraph 25 and the indicated portions of Paragraphs 24 and 26.

*Yarborough, Blanchard, Tucker & Denson for plaintiff appellant.*

*Dupree, Weaver, Horton, Cockman & Alvis, by F. T. Dupree, Jr., and John E. Aldridge, Jr., for defendant appellees Kriebel.*

BOBBITT, C.J.

Plaintiff's intestate was killed on March 16, 1968. Chapter 215, Session Laws of 1969, entitled "AN ACT TO REWRITE G.S. 28-174, RELATING TO DAMAGES RECOVERABLE FOR DEATH BY WRONGFUL ACT," was ratified April 14, 1969. This action was instituted on July 3, 1969.

G.S. 28-173 confers upon an administrator the right of action to recover for the wrongful death of his intestate. G.S. 28-174 relates to the basis on which the amount of damages recoverable is to be determined. With reference to the origin and import of these statutes, see *Lamm v. Lorbacher,* 235 N.C. 728, 71 S.E. 2d 49; *Armentrout v. Hughes,* 247 N.C. 631, 101 S.E. 2d 793; *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E. 2d 241, 81 A.L.R. 2d 939.

[1]  On March 16, 1968, the date plaintiff's intestate was killed, G.S. 28-174 provided: "The plaintiff in such action may recover such damages as are a fair and just compensation for the pecuniary injury resulting from such death." In numerous decisions, this Court had held that the measure of the damages recoverable under G.S. 28-174 for the loss of a human life is the *present value* of the *net pecuniary worth* of the deceased based upon his *life expectancy. Bryant v. Woodlief, supra,* and cases cited. The successive steps by which the jury was to arrive at the amount of its award are set forth in *Caudle v. R. R.,* 242 N.C. 466, 469, 88 S.E. 2d 138, 140.

G.S. 28-174 did not permit the assessment of punitive damages

or the allowance of nominal damages. *Armentrout v. Hughes, supra,* at 632. Nor did it permit the recovery of funeral expenses. *Davenport v. Patrick,* 227 N.C. 686, 691, 44 S.E. 2d 203, 206. As stated by Reid, J., in *Collier v. Arrington,* 61 N.C. 356, and quoted with approval in *Armentrout v. Hughes, supra,* at 633: "(O)ur statute, which gives an action to the representative of a deceased party, . . . confines the recovery to the amount of *pecuniary injury.* It does not contemplate *solatium* for the plaintiff, nor punishment for the defendant. It is therefore in the nature of pecuniary demand, the only question being, how much has the plaintiff (estate) lost by the death of the person injured?" Although the administrator, in a separate personal injury action, could recover for pain and suffering and for hospital and medical expenses between the date of injury and death, these were not proper elements of damage in a wrongful death action. *Hoke v. Greyhound Corp.,* 226 N.C. 332, 38 S.E. 2d 105; *Hinson v. Dawson,* 241 N.C. 714, 86 S.E. 2d 585.

Chapter 215, Session Laws of 1969, provides:

"Section 1.   G.S. 28-174 is hereby rewritten to read as follows:

" 'Sec. 28-174.   *Damages recoverable for death by wrongful act; evidence of damages.*   (a)   Damages recoverable for death by wrongful act include:

(1)   Expenses for care, treatment and hospitalization incident to the injury resulting in death.

(2)   Compensation for pain and suffering of the decedent.

(3)   The reasonable funeral expenses of the decedent.

(4)   The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

(i)   Net income of the decedent.

(ii)   Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,

(iii)   Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

(5)   Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence.

(6)   Nominal damages when the jury so finds.

" '(b)   All evidence which reasonably tends to establish any of the elements of damages included in subsection (a), or otherwise reasonably tends to establish the present monetary value of the decedent to the persons entitled to receive the damages recovered, is admissible in an action for damages for death by wrongful act.'

"Sec. 2.   All laws and clauses of laws in conflict with this Act are hereby repealed.

"Sec. 3.   This Act shall not apply to litigation pending on its effective date.

"Sec. 4.   This Act shall become effective upon ratification."

[2]   The 1969 Act *ex vi termini* does not apply retroactively where the death occurred prior to April 14, 1969, *and* an action therefor was instituted on or before April 14, 1969, and was pending on that date. The question for decision is whether the 1969 Act applies retroactively where the death occurred prior to April 14, 1969, but no action therefor was pending on that date.

If this action is to be tried in accordance with the provisions of G.S. 28-174 in effect on March 16, 1968, and the decisions of this Court with reference thereto, the portions of the complaint challenged by defendants' motion were properly stricken. On the other hand, if the 1969 Act, which rewrote 28-174, applies to actions based on deaths occurring prior to April 14, 1969, for which no litigation was pending on that date, the challenged allegations were permissible.

[3]   On March 16, 1968, when plaintiff's intestate was killed, G.S. 28-173 and G.S. 28-174 conferred upon the personal representative of a decedent a right of action to recover "such damages as are a fair and just compensation for the pecuniary injury resulting from such death." G.S. 28-173 and G.S. 28-174 *as rewritten by the 1969 Act* confer upon the personal representative of a decedent a new right of action for wrongful death. Although the procedural remedy, an action by the personal representative, is the same, the substantive rights of the parties are different. The 1969 Act provides for the recovery in the personal representative's action of (1) expenses for care, treatment and hospitalization incident to the injury resulting in death; (2) compensation for pain and suffering of the decedent; (3) the reasonable funeral expenses of the decedent; (4) punitive damages; and (5) nominal damages. Prior to the 1969 Act, the administrator had no right of action to recover such damages. Moreover, the 1969 Act provides for the recovery of "(t)he present monetary value of the decedent *to the persons entitled to receive the damages recovered,*" including but not limited to compensation for enum-

erated items. (Our italics.) We do not undertake now to define the legal significance of this provision. Suffice to say, damages determinable in accordance with this provision of the 1969 Act are quite different from damages determinable on the basis of the pecuniary injury suffered *by the decedent's estate* as the result of his death. In our view, the 1969 Act created a cause of action for wrongful death that did not exist on March 16, 1968, when plaintiff's intestate was killed. Questions relating to the elements of such new cause of action will be decided when directly presented in subsequent litigation.

Our conclusion that the 1969 Act created a new cause of action is supported by the decisions considered below.

In *Keeley v. Great Northern Ry. Co.*, 121 N.W. 167 (Wisc. 1909), a Wisconsin statute in effect when the death occurred limited the damages recoverable to $5,000.00. Thereafter, during the pendency of the action, a statute was enacted which permitted a recovery up to $10,000.00. In holding there could be no recovery in excess of $5,000.00, Winslow, C.J., for the Supreme Court of Wisconsin, said: "When this accident happened, the plaintiff had a claim for the recovery of not exceeding $5,000. Beyond this amount she had no claim or cause of action. When the Legislature afterward said that in such cases there might be a recovery up to the sum of $10,000, they in effect created a new cause of action for the second $5,000. It was not a mere change in remedy, but to all practical purposes it created a new right of action. If it created a new right, and did not merely change the remedy, it is not applicable to prior transactions."

In *Monroe v. Chase*, 76 F. Supp. 278 (D.C. Ill. 1947), the wrongful death action was pending when the Illinois statute was amended by increasing the maximum recoverable damages from $10,000.00 to $15,000.00. Denying the plaintiff's application for leave to amend the complaint so as to increase the demand for damages from $10,-000.00 to $15,000.00, District Judge Wham said: "(T)he amendment in question amended the right given by the statute rather than the remedy or the procedure by which the statutory right might be ripened into judgment. The amendment increases the liability of one who is guilty under the statute. The amendment is one of substantive law and not one of adjective law. It affects the relief provided by the statute and not the mode of obtaining relief. To give the amendment effect in this case which involves a prior death would be contrary to the well established rule in Illinois that statutes are prospective and will not be considered to have retroactive operation unless the language employed in the enactment is so clear that it will admit of no other construction. (Citations.) Whether or

not, under the law of Illinois, the statutory right to relief in a death case may be said to be a vested right, no persuasive authority appears for the position that a statutory increase in the maximum liability may be retroactive or given a retrospective application in the absence of clear language that the lawmakers so intended."

In *Theodosis v. Keeshin Motor Express Co.*, 92 N.E. 2d 794 (Ill. App. 1950), the limit of liability was $10,000.00 when the death occurred. Thereafter, the limit was increased to $15,000.00. The verdict and judgment for plaintiff were for $15,000.00. Justice Schwartz put the question for decision in these words: "(T)he pertinent inquiry is not whether the legislature can take away a plaintiff's rights in such cases, but whether they can create a liability against a defendant for a prior wrongful death. In other words, could the first Lord Campbell's Act have been applied retroactively, and if so, how far back?" Holding the statute did not apply retroactively, the cause was remanded for the entry of a judgment in the plaintiff's favor for $10,000.00.

In *Field v. Witt Tire Co. of Atlanta, Ga.*, 200 F. 2d 74 (2d Cir. 1952), a Connecticut wrongful death statute in effect prior to October 1, 1951, provided for the recovery of "just damages not exceeding twenty thousand dollars" plus medical, hospital, nursing and funeral expenses. An action to recover for a death that occurred on June 15, 1950, was pending when a substitute wrongful death statute was passed, effective October 1, 1951, which provided for the recovery of "just damages" plus medical expenses, without limit as to amount. A separate Connecticut statute provided: "The passage or repeal of an act shall not affect any action then pending." It was held, based on Connecticut decisions, "that legislation is not to be applied retroactively unless the legislation unequivocally expresses a contrary intent," with the exception of "statutes which are general in their terms and affect matters of procedure." Pertinent to the case *sub judice* is this excerpt from the opinion of Circuit Judge Frank: "However, this exception does not include a statute which, although in form providing but a change in remedy, actually brings about 'changes involving substantive rights.' (Connecticut citations.) We think the new statute *so markedly affects 'substantive rights'* that the Connecticut Supreme Court would interpret it as not retroactive." (Our italics.)

In *Herrick v. Sayler*, 245 F. 2d 171 (7th Cir. 1957), the plaintiff-father instituted this action April 5, 1955, in a United States District Court, to recover damages in the amount of $5,500.00 for the death on March 25, 1955, of his minor child. The action was based on an

Indiana statute which provided that a father may maintain an action for the injury or death of a child. When the death occurred, the statute provided that "the damages, if any recovered, shall not exceed the reasonable medical, hospital or funeral expenses incurred, and a sum not to exceed one thousand dollars . . . for any and all other loss, if sustained." A statute which became effective June 30, 1955, prior to the commencement of the action, increased the amount recoverable to $5,000.00 in addition to the previously recoverable expenses. Holding the statute did not apply retroactively to a cause of action which accrued prior to June 30, 1955, its effective date, the diversity action was dismissed on the ground the amount involved, exclusive of interest and costs, did not exceed $3,000.00. The opinion of Circuit Judge Swain includes the following: "Indiana follows the general rule that statutes will not be given a retroactive operation, unless the legislature unequivocally expresses a contrary intent, if by making them so operate vested rights and obligations will be affected. (Citations.) An exception to this general rule is recognized with regard to remedial statutes — where retroactive operation is necessary to carry out the purpose of the law and no new rights are given or existing rights taken away, but only a new remedy is afforded for the enforcement of an existing right. (Citations.)"

In *Conn v. Young,* 267 F. 2d 725 (2d Cir. 1959), the federal court's jurisdiction was based on diversity of citizenship. The death occurred July 21, 1956, and was the result of an automobile accident in New Hampshire. At that time, under the New Hampshire statute, recovery for wrongful death was limited to $15,000.00. An amendment which became effective June 30, 1957, raised the limit to $25,000.00. The trial judge instructed the jury that a recovery might be had up to $25,000.00. On the defendant's appeal from a verdict and judgment in the plaintiff's favor for $25,000.00, Circuit Judge Medina said: "We are convinced that New Hampshire would follow its usual rule of applying legislation only prospectively. (Citation.) Indeed, New Hampshire appears to carry this rule even further than do most jurisdictions, for it is applied at least to some matters of procedure as well as to substantive rights. (Citation.). . . . The instruction permitting recovery up to $25,000 was plain error . . . ."

Also see: *Regan v. Davis,* 138 A. 751, 54 A.L.R. 1073 (Pa. 1927); *Zontelli Brothers v. Northern Pacific Railway Co.,* 263 F. 2d 194 (8th Cir. 1959); *Muckler v. Buchl,* 150 N.W. 2d 689 (Minn. 1967); Annot., 98 A.L.R. 2d 1105 at 1110-1113.

If the General Assembly had provided that the 1969 Act was to apply retroactively and confer upon a personal representative a right of action that did not exist when the death occurred, serious questions as to the constitutionality of such retroactive application would be presented.

In *Minty v. State*, 58 N.W. 2d 106 (Mich. 1953), a tort action, it was held the plaintiff had a vested right in his cause of action when his right of action became complete and could not be deprived thereof by a repealing statute passed thereafter. When the plaintiff was injured, he had a cause of action against the State because a Waiver of Immunity Act was then in effect. Thereafter, the Waiver of Immunity Act was repealed.

In *Lewis v. Pennsylvania R. Co.*, 69 A. 821 (Pa. 1908), under the 1868 statute then in force, no recovery against the railroad company could be based upon the negligence of a fellow servant. Thereafter, the 1868 Act was repealed by an act of June 10, 1907, which abolished the fellow-servant doctrine. The court held the law in force when death occurred, that is, when the cause of action became complete, was determinative. The rationale of the opinion is that the 1907 Act, if construed "to impose a liability for a past occurrence where none existed at the time, or, what is the same thing, take away a legal defense available at the time," would exceed constitutional limitations.

General principles relating to whether statutes should be construed to apply prospectively or retroactively include the following:

**[4, 5]** *"Ordinarily, an intention to give a statute a retroactive operation will not be inferred. If it is doubtful whether the statute or amendment was intended to operate retrospectively, the doubt should be resolved against such operation.* It is especially true that the statute or amendment will be regarded as operating prospectively only, where it is in derogation of a common-law right, or where the effect of giving it a retroactive operation would be to interfere with an existing contract, destroy a vested right, *or create a new liability in connection with a past transaction, invalidate a defense which was good when the statute was passed, or, in general, render the statute or amendment unconstitutional."* (Our italics.) 50 Am. Jur. Statutes § 478. Accord: 82 C.J.S. Statutes § 413; *Ashley v. Brown*, 198 N.C. 369, 372, 151 S.E. 725, 727; *Waddill v. Masten*, 172 N.C. 582, 584, 90 S.E. 694, 695; *Hicks v. Kearney*, 189 N.C. 316, 319, 127 S.E. 205, 207.

**[6]** "A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, *or*

*creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already passed. Hence, remedial statutes, or statutes relating to remedies or modes of procedure,* which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against a retrospective operation of statutes. To the contrary, statutes or amendments pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention." (Our italics.) 50 Am. Jur. Statutes § 482. Accord: 82 C.J.S. Statutes § 416; *Ashley v. Brown, supra; Tabor v. Ward,* 83 N.C. 291, 295; *Waddill v. Masten, supra; Byrd v. Johnson,* 220 N.C. 184, 187, 16 S.E. 2d 843, 846.

[3] Applying the foregoing principles, we hold the 1969 Act has no application to an action for wrongful death where the death occurred prior to April 14, 1969, the date it became effective.

[7] There remains for disposition plaintiff's contention that the decision in *Spencer v. Motor Co.,* 236 N.C. 239, 72 S.E. 2d 598, is authority for the position that the General Assembly intended that the 1969 Act should be applied to deaths which had occurred prior to its effective date. In *Spencer,* this Court held the 1951 statute, which is now codified as G.S. 20-71.1, applied in the trial of all actions except actions which were pending when the 1951 statute became effective. This 1951 statute related solely to the *prima facie* effect of certain evidence. It did not confer any right of action. It did not enlarge or diminish the substantive rights of any party. Under the general rule, the 1951 statute, which related solely to a mode of procedure, would have applied to all trials thereafter conducted except for the explicit statement therein that "the provisions of this Act shall not apply to pending litigation." The 1969 Act, which provides solely for substantive changes, to wit, the creation of a new right of action for wrongful death, would not apply retroactively to deaths occurring prior to its effective date without regard to whether such deaths were the subject of litigation then pending. We take notice of this excerpt from the opinion in *Spencer:* "Moreover, the maxim *expressio unius est exclusio alterius,* that is, that the expression of one thing is the exclusion of another, applies. From the fact that the Legislature expressly provided that the provisions of the Act shall not apply to pending litigation, it may be implied that it should apply in all other cases." Seemingly, this statement was appropriate where the statute under consideration related to procedural remedies rather than to substantive rights. However,

we hold it may not be considered authoritative with reference to a statute such as the 1969 Act which relates solely to substantive rights and creates a new right of action.

For the reasons stated, the judgment of Judge Carr is affirmed.

Affirmed.